| 211 | 409 |
| s217 | 37 |
| s217 | 39 |

## Donner *v.* Donner, Appellant.

*Equity—Accounting—Profits—Trust and trustees—Corporation.*

Where a corporation is organized with a large capital, and the organizers pay in in cash only one tenth of the capital stock, and thereafter one of the organizers sells to his brother a portion of his stockholdings at par, paying himself with moneys which he had received from his brother for investment and subsequently the organizers develop the company by means of moneys borrowed on the company's notes with their own indorsements, and thereafter the company, together with certain subordinate companies which it owned, are sold at a very large profit, the organizer who sold stock to his brother must account to him for profits received in proportion to their respective holdings of capital stock, and not in the proportion of the funds furnished by the brother to all the money invested in the enterprise whether paid on account of stock, or borrowed on the company's notes.

Argued Feb. 15, 1905.  Appeal, No. 200, Oct. T., 1904, by defendant, from decree of C. P. No. 1 Allegheny Co., Sept. T.,

1903, No. 111, on bill in equity in case of Frank Donner v. William H. Donner. Before DEAN, FELL, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Bill in equity for an account.

BROWN, J., filed the following opinion:

Upon June 16, 1903, Frank Donner filed a bill against William H. Donner, alleging:

1. That in March, 1901, under a contract between them, the plaintiff purchased from the defendant a $25,000 stock interest in defendant's stock interest, at par, in three corporations, namely, Union Steel Company (incorporated November 13, 1899, with a capital of $1,000,000, divided into 10,000 shares of the par value of $100 each) ; Union Improvement Company (incorporated April 23, 1900, with a capital of $100,000, divided into 2,000 shares of the par value of $50.00 each) ; River Coal Company (incorporated July 3, 1900, with a capital of $1,000, divided into ten shares of the par value of $100 each), but never received stock certificates therefor.

2. That the number of shares of capital stock (in said three companies) purchased by plaintiff, as aforesaid, was: Union Steel Company 227 shares; Union Improvement Company 45 40/100 shares ; River Coal Company 227/1000 of a share ; it being the agreement between plaintiff and defendant, at the time of the purchase, that the number of shares so purchased in each of said companies should be in the proportion that said $25,000 purchase money bore to the aggregate capital stock of the companies at the date of said purchase.

3. That subsequently the assets of the Union Steel Company were used by the defendant and others in purchasing the corporate stock and property of the Republic Coke Company; in the formation and incorporation of the Donora Mining Company and purchase of its mines and property ; and in purchasing freight vessels for shipping ores and other products.

4. That about December 15, 1902, the defendant and the other owners sold said freight vessels and stock, property and assets of all of said companies (except the Union Improvement Company) to the United States Steel Corporation for upwards of $22,300,000—the defendant receiving a profit—the exact amount of which plaintiff is unable to state, but believes to

have been about $1,825,000 (in which the plaintiff's share was a 1/10—$182,500).

5. That in addition to said $182,500, plaintiff is entitled to his share of the Union Improvement Company's stock held by defendant and to dividends thereon received by defendant.

The defendant filed an answer denying the plaintiff's $25,000 investment was of a definite number of shares, or fraction of shares, of stock in the Union Steel Company, River Coal Company and Union Improvement Company, at par; or that it was a stock investment based upon the proportion that $25,000 bore to the original charter capital of said companies, but averring that it was simply a $25,000 interest in defendant's interest, to this extent; that when the amount of money required by the enterprise should be ultimately and finally determined, and the manner in which it should be financed and settled, the plaintiff would be entitled to receive shares of the capital stock, or bonds, or both—in such proportion as the $25,000 paid by him bore to the total amount contributed to the enterprise—upon the same basis as the defendant and other parties interested therein.

The answer set up other matters of defense (inter alia, denying that the stock and property of the Republic Coke Company and Donora Mining Company were assets of the Union Steel Company, or purchased by said company, and therefore denying that plaintiff's trust right included an interest in said companies).

As the other defenses—not specifically referred to—relate largely to matters involved in the accounting, they will only incidentally be referred to in disposing at this stage of the proceedings, the main issue upon which the controversy turns, namely: What was the contract (contractual intent) of plaintiff and defendant touching the $25,000 investment made by plaintiff with defendant in March, 1901? And with that ascertained the trust—as applied to the corporate investments through which it passed—may be traced and measured with reasonable certainty by an accounting.

What was the contract? As part of the consideration (between plaintiff and defendant) inducing its execution, the clear weight of the testimony establishes that the plaintiff, until the spring of 1900, was manager of the American Tin

Plate Company, in Indiana, and that he agreed to resign from that position and accept a new position in the enterprise projected by the defendant, provided he were allowed to invest his money in the stock thereof. To make a long story short (for the testimony is very voluminous) the defendant finally acceded to plaintiff's request for stock by selling him in March, 1901, $25,000 worth of defendant's interest in the Union Steel Company, Union Improvement Company and River Coal Company. And said sum was paid by plaintiff to defendant in two installments of $12,500 each—one in March, the other in July, 1901.

The testimony likewise clearly establishes that plaintiff was buying $25,000 worth of stock in defendant's interest in said three companies, and was to receive certificates of stock therefor. Numerous letters and conversations confirm that such was the agreement. The following letters (and other letters, prior and subsequent), strongly sustain this view :

" (Exhibit No. 19.)

" UNION STEEL COMPANY.

" PITTSBURG, PA., 3-21-1901.

" DEAR FRANK :—Please send me check for $12,500 to apply on a $25,000 interest in my interest in Union Steel, River Coal & Union Improvement Co.

" It will probably be some time before stocks are issued, and I can not give you more than receipt for present.

" Yours truly,

" W. H. DONNER."

" (Exhibit No. 34.)

" UNION STEEL COMPANY.

" DONORA, PA., Mar. 25", 1901.
" W. H. Donner, Pittsburgh, Pa.

" DEAR WILL :—Enclosed find check for $12,500, to apply on my interest in U. S. Co., U. I. Co. & River Coal stock. Hope before stock is issued you will take the matter up with stockholders and can arrange to let me have the $50,000 instead of the $25,000 portion of yours. As they have talked

of setting aside a portion of stock for employees the matter could be brought up o. k. You might explain that you had promised me stock & that I wanted 50M, or if you prefer make it 60,000, and I will take care of Perce. (Believe he wants 10M.)

" Kindly arrange if possible.

" Yours truly,

" FRANK."

With these facts established, the next issue of fact to be determined is, What was defendant's interest in the Union Steel Company, Union Improvement Company and River Coal Company in March, 1901 ?—for that was the date of sale by defendant to plaintiff of the $25,000 stock interest in defendant's interest in said companies. At that time the defendant's interest was $343,750. That was the sum he then had invested in the companies. And the proportion that plaintiff's $25,000 bore to defendant's $343,750 was the ratio of his stock interest in defendant's interest in the corporate projects. In other words, 25,000/343,750 (4/55) of defendant's interest was plaintiff's stock share of the investment—an investment between them, in that ratio, running through the enterprise to its sale to the United States Steel Corporation. No other just inference of fact can be drawn from the testimony.

It is true that the $343,750 interest of the defendant (which included plaintiff's $25,000 proportional interest), was ultimately increased by funds raised by the defendant ; but the testimony shows that plaintiff was willing to carry his portion of any increase, and so informed the defendant. And the testimony further shows that the impression he got from the defendant was that the Mellons—interested in the enterprise— were going to carry any additional amounts required. Plaintiff was never called upon by defendant to make further payments.

Were the Donora Mining Company and the Republic Coke Company portions of the Union Steel enterprise ? That they were portions of it—portions accruing after plaintiff's purchase of the interest in defendant's interest—there cannot be a doubt:

(*a*) The testimony of S. H. Waddell, former secretary and assistant treasurer of the Union Steel Company, shows that hundreds of thousands of dollars were advanced, loaned or

paid by and through the Union Steel Company in the formation and operation of the Donora Mining Company and the Republic Coke Company plants—the exact amount he is unable to state. It is clear that the credit of the Union Steel Company was used in raising said funds and in promoting the success of those companies.

(*b*) In referring to the Republic Coke Company defendant says :

" Messrs A. W. Mellon and R. B. Mellon owned two-thirds of the corporate stock of that company; and about July, 1901, they purchased the remaining one-third of the capital stock. The authorized capital stock of the company was $12,000. Thereafter, it being thought desirable that the properties of this company might be added to the Union Steel Company enterprise, I was permitted to acquire a one-quarter interest in the property of this company."

(*c*) And again—in referring to the Donora Mining Company, organized in the latter part of 1901—defendant says : " In the same way, during 1901 and 1902, we were making efforts to acquire the ore necessary to protect the company in its supply of raw materials ; and finally we purchased and leased a large amount of ore property in the states of Minnesota and Michigan and organized the Donora Mining Company."

(*d*) And again—in referring to the freight vessels—defendant says : " Said vessels were transferred to and were owned by the Donora Mining Company for use in transporting ore."

(*e*) From the Union-Sharon agreement of November 20, 1902, executed by defendant and the Mellons (parties of the first part) the following extracts are drawn :

" WHEREAS, The parties of the first part own or control all of the capital stock of the Union Steel Company (hereinafter called Union) and certain companies connected in interest therewith, to wit: the Republic Coke Company, the River Coal Company . . . . Donora Mining Company . . . .

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

" Sixth. There are purchase money obligations on some of the properties of Union, namely: Republic Coke Company, River Coal Company and the Donora Mining Company . . . ."

(*f*) About December 15, 1902, defendant and the other holders of stock of the Union Steel Company sold and trans-

ferred the stock and assets of the Union Steel Company, River Coal Company, Republic Coke Company and Donora Mining Company—including the interest of plaintiff therein—to the United States Steel Corporation for upwards of $22,300,000; on which the profits were upwards of $7,300,000—defendant receiving one fourth thereof.

(*g*) Prior to said sale to the United States Steel Corporation defendant and the other holders of stock of the Union Steel Company effected the sale and transfer to the Union Steel Company of the stock and assets of the River Coal Company, Republic Coke Company and Donora Mining Company; and the title to the stock and assets of all of said companies (as the property of the Union Steel Company) was sold and transferred to the United States Steel Corporation.

(*h*) After said sale by defendant and the other holders of stock of the Union Steel Company to the United States Steel Corporation, the defendant, on March 10, 1903, submitted to plaintiff a statement of the profits of the sale of all the properties (including those of the Republic Coke Company and Donora Mining Company) for the purpose of settling with plaintiff—and admitted plaintiff's right to share in the profits of all of said companies (including the Republic Coke Company and the Donora Mining Company).

The interest of the defendant in the Union Steel Company —and in each of the subsidiary companies (Union Improvement Company, River Coal Company, Republic Coke Company and Donora Mining Company) was one fourth.

### CONCLUSIONS OF LAW.

Prior to March, 1901, plaintiff's hoped-for stock interest in defendant's interest—as to amount—had not been agreed upon; for the minds of the parties were widely apart upon that subject. Non constat that they would ever agree. True, the defendant had previously offered plaintiff $20,000 worth of defendant's interest; but that offer had not been accepted. In the meantime the value of defendant's interest had been steadily advancing. And necessarily plaintiff's purchase was based upon the value of defendant's interest at that date (March, 1901).

In March, 1901, the defendant's interest in the Union Steel

Company, Union Improvement Company and River Coal Company was $343,750—$25,000 of which sum passed to plaintiff by the sale to him at that date; so that from that time the interest of the plaintiff was $25,000, of the defendant, $318,750; and in this ratio the joint venture of plaintiff and defendant coursed to its sale to the United States Steel Corporation in December, 1902. Any other measure would be inequitable—violating not only the fair presumption to be drawn from the testimony, but the well-settled legal presumption applicable to joint ventures, joint-stock interests and partnerships.

If the defendant's intent in the sale was to give plaintiff not a $25,000 interest in his $343,750 interest, but a $25,000 interest in defendant's ultimate interest—ultimately exceeding many times that sum—it was his duty before closing the deal to have expressed that intent. But failing to disclose such intent, the legal presumption of their joint ratio of interest followed. And thereafter, so far as the joint interest was increased by advancements by the defendant, the proportion chargeable to plaintiff's share may be ascertained and adjusted in the accounting.

In the care of plaintiff's interest the defendant, as trustee, was bound to exercise the utmost good faith. And good faith meant that in the ratio the trust bore to defendant's $343,750 interest (of which it was a part) it would share in the ultimate disposition of the property. Good faith meant loyalty to all the interests of the beneficiary.

The trust relation of an agent is well stated in Mechem on Agency, sec. 469:

"All profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent. If his duty be strictly performed, the resulting profit accrues to the principal as the legitimate consequence of the relation; if profit accrues from his violation of duty, that likewise belongs to the principal, not only because the principal has to assume the responsibility of the transaction, but also because the agent cannot be permitted to derive advantage from his own default. It is only by rigid adherence to this rule that all temptation can be removed from one acting in a fiduciary

capacity to abuse his trust or seek his own advantage in the position which it affords him."

### DECREE.

1. That the defendant, William H. Donner, is the trustee of the plaintiff, Frank Donner, for the interest of the plaintiff in the proceeds and profits of the sale of the stock, holdings and property of Union Steel Company, River Coal Company, Republic Coke Company and Donora Mining Company to United States Steel Corporation; which said interest of the plaintiff in said proceeds and profits is four fifty-fifths (4/55) of one fourth ($\frac{1}{4}$) thereof.

2. That the defendant, William H. Donner, is the trustee of the plaintiff, Frank Donner, for the interest of the plaintiff in the stock of Union Improvement Company, which was sold by the defendant to the plaintiff; and for the interest of the plaintiff in all sums of money, dividends, proceeds and profits which heretofore have been received, and which may have accrued to and hereafter may be received by the defendant, on account of said stock; which said interest of the plaintiff in said stock is four fifty-fifths (4/55) of one fourth ($\frac{1}{4}$) of the total capital stock of said company; and which said interest of the plaintiff in said sums of money, dividends, proceeds and profits is four fifty-fifths (4/55) thereof.

3. That the defendant, William H. Donner, is liable to account, and is required to account to the plaintiff, Frank Donner, for the interest of the plaintiff in the proceeds and profits of the sale of the stock, holdings and property of Union Steel Company, River Coal Company, Republic Coke Company and Donora Mining Company to United States Steel Corporation; and for the interest of the plaintiff in all other sums of money, dividends and profits which accrued to the defendant on account of said stocks and property; and for the interest of the plaintiff in all sums of money, dividends, proceeds and profits which heretofore have been received, and which may have accrued to and hereafter may be received by the defendant, on account of the interest of the plaintiff in the stock of Union Improvement Company.

4. That the defendant, William H. Donner, deliver to the plaintiff proper certificates for four fifty-fifths (4/55) of one

fourth (¼) of the total capital stock of Union Improvement Company.

*Error assigned* among others was the decree of the court.

*John G. Johnson*, with him *J. H. Beal*, for appellant.—The contract averred by the bill, and which it sought to enforce, was a purchase by appellee from appellant, for the price of $25,000, of a specified number of shares in three companies.   The profits realized upon these shares, also those upon certain other shares alleged to have been purchased with the funds of the three first companies, were demanded.

The testimony overwhelmingly established a contribution by appellee of $25,000 in payment of an interest of that amount in appellant's interest in a total enterprise.   The profit to which appellee was entitled was the proportion which his contribution bore to the appellant's contribution to the whole enterprise, completed.

If the contract had been such as was averred by appellee, he would only have been entitled to the profits realized upon the shares by him purchased.   The holders of the residue of shares issued by the corporations for legitimate expenditures would have been entitled to all the profits thereon.

*John C. Bane*, with him *D. F. Patterson*, for appellee.

OPINION BY MR. JUSTICE POTTER, April 10, 1905:
This is a bill for an accounting.   The defendant admits that he has occupied a fiduciary relation to the plaintiff, but the terms of the contract, under which he accepted from the plaintiff the sum of $25,000, for investment, are in dispute.   In accounting for the profits of the transaction in which both were interested, the defendant is not willing to share with the plaintiff, in proportion to the amount paid by each in cash, into the capital stock of the corporation which was organized, and whose properties were developed and sold.   He claims that his obligation only requires him to give to the funds furnished by the plaintiff, the proportionate shares of profits, which would accrue, if all the money invested in the enterprise, most of which was borrowed by the company, be considered as capital

stock.   But in dividing among themselves the net results of
this transaction, the defendant and his associates shared the
profits in exact accordance with their holdings in the stock of
the Union Steel Company, and it was upon this basis that the
defendant received one fourth of the amount.   Large sums of
money were loaned to the company through the good offices of
the two principal stockholders and by means of their indorse-
ments.   Presumably, compensation for the loans was made by
the payment of interest to the lenders.   The plaintiff here con-
tends, that the money he gave to the defendant was in pay-
ment for a definite number of shares of the capital stock of the
Union Steel Company, in which the defendant was at the time
interested to the extent of one fourth of the entire capital
stock.   The authorized capital of the Union Steel Company
was $1,000,000, and the defendant was entitled to take and
pay for one fourth of this amount, or $250,000 of the stock,
divided into shares of the par value of $100 each.   According
to the view of the plaintiff, the amount which he paid in cash
to the defendant, which was $25,000, was equal to just one
tenth of the entire interest owned by the defendant, so that as
he estimated it, he was buying the one tenth of a quarter in-
terest in the entire capital stock of the Union Steel Company.

It seems that in the latter part of the year 1899, the de-
fendant and a few associates organized the Union Steel Com-
pany for the purpose of building a plant, and manufacturing
steel near Pittsburg.   The authorized capital was $1,000,000,
and ten per cent of this amount, or $100,000, was paid into
the treasury of the company in cash by its organizers before the
charter was granted.   It does not appear from the evidence
that anything more than this was ever paid in as capital stock.
The additional funds needed were raised by borrowing, upon
the demand notes of the company, indorsed by individual
stockholders.   The defendant, who was entitled to one quarter
of the stock, paid in his one fourth of the cash subscription,
which was $25,000, and it does not appear that he ever paid
anything more as subscription to the capital stock of the Union
Steel Company.   In order to facilitate the work of the steel
company, and to strengthen its position, various subsidiary
companies were organized in connection with the Union Steel
Company.   The Union Improvement Company was intended

to acquire real estate to be bought and sold in connection with the works, for dwellings and otherwise. The River Coal Company was intended to purchase coal and coke land for the supply of the mills and furnaces. The Donora Mining Company was organized for the purpose of holding mining lands to supply ore. The Republic Coke Company was acquired to insure that form of fuel. But these companies were managed and financed through the agency and offices of the Union Steel Company and with the exception of the Improvement Company were all sold to, and vested in, the Union Steel Company prior to the sale of its entire capital stock to the United States Steel Company.

The relation of the defendant to these various companies was the same as it was to the chief factor in the aggregation— the Union Steel Company, and it was through his ownership in that, that his share of the proceeds of the entire transaction was worked out.

The trial court has found as a fact, that " the clear weight of the testimony establishes that the plaintiff, until the spring of 1900, was manager of the American Tin Plate Company in Indiana ; and that he agreed to resign that position and accept a new position in the enterprise projected by the defendant, provided he were allowed to invest his money in the stock thereof." That " the defendant finally acceded to plaintiff's request for stock by selling him in March, 1901, $25,000 worth of defendant's interest in the Union Steel Company, Union Improvement Company and River Coal Company. And said sum was paid by plaintiff to defendant in two installments of $12,500 each—one in March, the other in July, 1901. The testimony likewise clearly establishes that plaintiff was buying $25,000 worth of stock in defendant's interest in said three companies, and was to receive certificates of stock therefor."

This is the crucial point in the case. What was the understanding upon which the $25,000 was paid to the defendant, and received by him? Was it for the purchase of capital stock in the corporation ? Or was it simply to be invested in an interest in the enterprise, proportioned to the whole money cost of the entire undertaking ? The court below has found the former to be the fact, and that the defendant received the

money from plaintiff in payment for that amount of capital stock.

Our examination of the evidence has satisfied us, that this finding of fact and the conclusion based thereon, is amply justified. It is supported by the testimony of Frank Donner, and by that of his wife, and is very strongly corroborated by the correspondence between the parties. In a series of letters the plaintiff asks to buy stock. The defendant says there will be but one kind of stock, and encouraged plaintiff by saying he will let him have some of his, if other cannot be had. Then finally, after several months, upon March 21, 1901 (exhibit No. 19), the defendant writes as follows: "Dear Frank: Please send me check for $12,500 to apply on a $25,000 interest in my interest in Union Steel, River Coal and Union Improvement Company. It will probably be some time before stocks are issued, and I cannot give you more than receipt for present."

In reply to this letter, the plaintiff writes as follows (exhibit No. 34), dated March 25, 1901: "Dear Will: Enclosed find check for $12,500 to apply to my interest in U. S. Co., U. I. Co., and River Coal stock." There were other significant statements which we do not take space to quote. But we do not doubt, that during the preliminary correspondence and when the money was actually paid by the plaintiff to the defendant, both parties had in mind the actual purchase by the plaintiff of a definite amount of capital stock. Otherwise, the repeated references to stock and to the issue of the certificates therefor, are utterly meaningless. It is perfectly apparent from the evidence that what was before the minds of the parties was the organization and development of the Union Steel Company, which had been incorporated with an authorized capital of $1,000,000. In this company, the defendant, it was agreed, had a one fourth interest, and this would entitle him to subscribe and pay for 2,500 shares the par value of $100 each, or $250,000 in all. In the other subsidiary companies, the defendant had the same proportionate interest, but it is admitted that the enterprise was substantially all one, and was controlled by and through, and in the interest of, the Union Steel Company, and that the interest held in it by the stockholders, measured the interest they held in all.

. We agree with the trial court, that the defendant is trustee for the plaintiff for the amount of $25,000 of the capital stock of the Union Steel Company, sold to him not later than March 21, 1901.

But in taking the next step, to fix the amount of the holding of the defendant in the Union Steel Company, at that time, so as to get at the relative proportions in which to divide the profits arising from the sale of the entire assets of the company, the trial judge assumed as a fact that W. H. Donner had paid in at the time he received the funds from his brother, the sum of $343,750 for capital stock. How this could be, is not shown. He was only entitled to subscribe for $250,000 in all, of the stock, so that if he did as a fact pay more than this amount into the treasury of the company, he must have occupied to that extent the position of creditor rather than that of stockholder. As a matter of fact, the most careful scrutiny of the evidence fails to show that he had at that time paid more than $25,000 cash into the Union Steel Company, upon account of his subscription to its stock. He seems also to have paid the same amount into the Union Improvement Company upon account of his subscription to its stock, and there stopped. Outside of these two payments his so-called contributions to the funds of this enterprise were apparently made up of the proceeds of demand notes made by the steel company, and indorsed by him. These notes could not in any sense be considered as payments to the company. They created indebtedness by the company. These demand notes were not paid, but were taken up by the issue of the company's bonds upon the final sale to the United States Steel Company. So that the defendant did not pay anything to the company by means of the issue of these notes. Defendant was evidently under the impression that the giving of these notes by the company, indorsed in part by him, constituted payment by him. He so treated them in his testimony. He says : " The cash advancements that I made were called bills payable, whereas the cash advancements that were made by Mr. A. W. Mellen and Mr. R. B. Mellen, in which I was charged on their books with a quarter, were called bills payable special, and those notes were made payable in first mortgage bonds." An inspection of the notes themselves as shown by the exhibits, shows that they

were all bills payable of the Union Steel Company, and the evidence is further that they were all paid by the issue of bonds by the corporation and were not paid by the defendant or by the Mellons. We are therefore unable to find in our analysis of the evidence any support for the statement by the defendant that he paid into the treasury of the Union Steel Company the sum of $343,750. But the trial judge has accepted the statement of the defendant in that respect, apparently without question. As to this point he says : " At that time the defendant's interest was $343,750. That was the sum he then had invested in the companies. And the proportion that $25,000 bore to defendant's—$343,450 was the ratio of his stock interest in defendant's interest in the corporate-projects. In other words, 25,000/343,750 (4/55) of defendant's interest was plaintiff's stock share of the investment—an investment between them, in that ratio, running through the enterprise to its sale to the United States Steel Corporation. No other just inference of fact can be drawn from the testimony." This was a mistake, for defendant was only entitled at the outside to subscribe for $250,000 of the stock, and he had not availed himself of his right to do that. But conceding his ownership to that extent, then the denominator of the fraction adopted by the court should have been 250,000 instead of 343,750.

But this finding as to the amount paid in by defendant does not affect the principle adopted by the trial judge ; it only affects the proportion. It did not meet the view of counsel for the plaintiff, as appears from their tenth request for findings of fact, which was refused by the court below. However no exception was filed, and no appeal was taken by the plaintiff, and we cannot further consider this feature of the case here.

Much has been said in the argument about a difference in the apparent percentage of profit derived by the parties. It is urged that the plaintiff upon his comparatively small investment was awarded over 500 per cent, while, measured by percentage, the defendant gets one tenth as much or less. But this discrepancy is apparent rather than real, and is only made to appear by giving to the defendant credit personally for having contributed the funds which were as a matter of fact loaned by other parties to the corporation ; and denying any part of this credit to the plaintiff. This is a mistaken view. The

corporation was in strong hands and they provided for it an astonishing extent of credit. But in so doing, they stood in the attitude of creditors, and not as stockholders; and the plaintiff as a shareholder was entitled to participate in the benefit resulting, in accordance with the amount of stock he held. In that respect, he was the only stockholder who paid in full, the par value in cash of his holding of stock in the company. The others, including the defendant, for reasons best known to themselves, did not pay for their stock, but chose to aid the company in borrowing funds, rather than pay into the treasury the full amount of their subscriptions. Of course, those who loaned money to the corporation, charged and were paid interest for the accommodation. But when it came to dividing the profits of the transaction, it was only as shareholders that they could participate in the results.

The culmination of the matter is thus set forth in the following finding by the court below: "About December 15, 1902, defendant and the other holders of stock of the Union Steel Company, sold and transferred the stock and assets of the Union Steel Company, River Coal Company, Republic Coke Company and Donora Mining Company—including the interest of plaintiff therein—to the United States Steel Corporation for upwards of \$22,300,000; on which the profits were upwards of \$7,300,000, defendant receiving one fourth thereof." It should be noted, however, as it appears in the evidence, that this consideration of \$22,300,000 was paid not in money, or outside securities, but by means of bonds issued by the Union Steel Company; and the funds which had been temporarily advanced upon its demand notes were repaid by the substitution of these bonds. So that the liability which the defendant and his associates had assumed was thus wiped out.

The difference between the amount of this indebtedness and the amount of bonds received, constituted the profits upon the transaction. This sum being the proceeds of bonds issued by the corporation, was of course assets in the hands of its stockholders, and could only be properly distributed to them as such.

The United States Steel Company gave no consideration for the stock and assets of the Union Steel Company, which passed entirely to it, except to place its guarantee of payment upon

the outstanding bonds of the Union Steel Company, issued before the transfer.

We have no doubt as to the right and duty of the court to grant the relief sought by this bill. The case was heard broadly upon its merits; upon bill and answer, and cross bill and answer. By filing his cross bill, the defendant indicated his desire for a complete determination of the whole matter.

When the defendant undertook to act as agent for his brother, the plaintiff, in the investment of his money in the stock of the Union Steel Company, he became thereby charged with the duty of protecting that interest, which was combined with his own, quite as fully as he could his own. The legitimate consequence of the relation of trust which he had assumed, was that the resulting profits which followed the investment made for the plaintiff in the capital stock of the Union Steel Company, accrued to the principal and must be accounted for, to him.

As the trial judge well said: " In the care of plaintiff's interest the defendant, as trustee, was bound to exercise the utmost good faith. And good faith meant that in the ratio the trust bore to defendant's interest (of which it was a part), it would share in the ultimate disposition of the property. Good faith meant loyalty to all the interests of the beneficiary."

The assignments of error are all overruled. The decree of the court below is affirmed and this appeal is dismissed at the cost of the appellant.