## Donner *v.* Donner, Appellant.

*Equity—Accounting—Profits—Trusts and trustees—Corporations.*

Where a corporation is organized with a large capital, and the organizers pay in in cash only one-tenth of the capital stock, and thereafter one of the organizers sells to his brother a portion of his stock holdings at par, paying himself with moneys which he had received from his brother for investment, and subsequently the organizers develop the company by means of moneys borrowed on the company's notes with their own indorsements, and not by paying up the capital, and thereafter the company, together with certain subordinate companies which it

owned, are sold at a very large profit, the organizer who sold stock to his brother must account to him for profits received in proportion to their respective holdings of capital stock, and not in proportion to the funds furnished by the brother to all the money invested in the enterprise whether paid on account of stock, or borrowed on the company's notes.

*Equity—Master's findings of fact—Accounting—Review.*

On a bill in equity against a trustee for an accounting, the appellate court will not review a master's findings of fact that the defendant sold certain bonds at par, and not at a discount, where such findings are confirmed by the court below, and are based upon admissions of the defendant, the papers in the case, and other competent evidence.

Argued Nov. 1, 1906. Appeal, No. 177, Oct. T., 1906, by defendant, from decree of C. P. No. 1, Allegheny Co., Sept. Term, 1903, No. 111, on bill in equity in case of Frank Donner v. William H. Donner. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an account.

The facts appear by the opinion of the Supreme Court and by the previous report of the case in 211 Pa. 409.

The court, in an opinion by BROWN, J., overruled certain exceptions to the report of J. M. Swearingen, Esq., master.

*Error assigned* was the decree of the court.

*James H. Beal* and *William A. Stone,* with them *Reed, Smith, Shaw & Beal* and *Robert J. Dodds,* for appellant.—The appellee's interest in appellant's interest in the Union Steel Company, Union Improvement Company and River Coal Company, should be fixed in the proportion that the amount of money contributed by appellee bears to the amount actually contributed by the appellant for his one-fourth interest : Donner v. Donner, 211 Pa. 409.

If the accounting should be made upon the basis of the interlocutory decree, as affirmed by this court, then the appellee is entitled only to a share of the proceeds and profits accruing to the stock interest of appellant, and these proceeds and profits are to be ascertained by finding the amount of bonds remain-

ing after payment of the debts and obligations required to be paid by the Mellons and W. H. Donner under the contract of sale : Jackson v. Thomson, 215 Pa. 209 ; Reeder v. Trullinger, 151 Pa. 287 ; Hart v. Stribling, 25 Florida, 433 (6 So. Repr. 455) ; R. R. Co. v. Bixby, 57 Vt. 548.

The amount of the indebtedness of the Union Steel Company, River Coal Company, Republic Coke Company and Donora Mining Company, assumed and paid by Mellons and W. H. Donner, was $15,746,938.15, and the amount of bonds remaining for distribution to the stock interest, after payment of this debt, was $2,975,115.20 of bonds at par value, of which W. H. Donner received one-quarter.

Mellons and Donner accepted these bonds at $708.07 per bond in payment of the money obligations of the Union Steel Company to them, including the payments required to be made under the Sharon-Union and steel corporation agreements, and this was a fair price at which to take the bonds.

*John C. Bane*, with him *D. F. Patterson*, for appellee.

OPINION BY MR. JUSTICE POTTER, January 21, 1907 :

This case was here before on an appeal from the interlocutory decree of the court below, ordering an accounting : Donner v. Donner, 211 Pa. 409. In that decree it was determined that the plaintiff was entitled to four fifty-fifths of the interest of the defendant in the various companies named in the bill. We were of the opinion that the principle upon which the accounting was ordered, was sound, although we did not agree with the calculation by which the exact fractional interest was ascertained. But as no exception had been filed by the plaintiff, and no appeal taken by him, that feature of the case was not considered, and the decree was affirmed as it stood.

Upon the return of the record, the court below ordered defendant to state and present to the court his account as trustee of the plaintiff, with leave to plaintiff to file exceptions thereto. In pursuance of said order an account was filed by defendant, to which plaintiff filed exceptions. Thereupon, the court appointed Joseph M. Swearingen, Esq., master " to state the account of Wm. H. Donner as trustee of Frank Donner in accordance with the findings of fact and law and the decree of

this court and the opinion and decree of the Supreme Court therein, and to make report thereof to the court."

The present appeal is taken by defendant from the dismissal of exceptions filed by him to the report of the master, and to the final decree, which confirmed the master's report, with a single modification.

Counsel for appellant have argued at considerable length substantially the same questions with regard to the basis of the proportionate interests of the appellant and the appellee which were decided on the former appeal. Due respect for the ability and force with which the argument in this particular was presented has led us to carefully re-examine the basis of our former decision; but, as a result, it has not appeared that we were under any material misapprehension as to the facts in reaching our former conclusion. Nor can we see anything wrong in the theory upon which the main question in the former appeal in this case was decided. The argument of counsel and our own investigation have tended to emphasize the fact which appears clearly in the evidence, that the parties in control of the Union Steel Company did not pursue the ordinary and sound business policy of paying into the treasury of the company, in cash or its equivalent, the capital stock of the company. Instead of paying in the required funds as capital, they chose to put their contributions to it, into the form of a loan to the company and took the demand notes of the company therefor. The result was, that instead of being amply provided with capital of its own, the company was placed in the position of being heavily in debt to its own stockholders. It matters not whether the notes thus taken from the company were discounted in bank or not. That is wholly immaterial. The notes were given to W. H. Donner and the Messrs. Mellon, and afterwards the payment of this indebtedness was made the excuse for the creation of an immense bonded indebtedness, which would have been wholly unnecessary for the purposes of the company, if the cash which had been paid in had been applied to capital stock. Strange as it may appear, there is no evidence that of the immense issue of $20,000,000 of capital stock, anything more than an insignificant fraction was ever paid into the treasury of the company. The total investment in the properties was $17,853,534.34, so

that the amount of the capital stock finally issued, which was $20,000,000, would have been, if it had been paid up in cash or its equivalent, considerably more than enough to cover the entire amount.   Or, to put it in another way, if the funds which were actually advanced by W. H. Donner and his associates, the stockholders of the company, had been paid into the treasury of the company as capital stock, there would have been no indebtedness, and no occasion for an issue of bonds to provide the necessary capital for the company, and the questions in dispute in this case would not have arisen.   It was the deliberate withholding from the company of the proceeds of the capital stock, which made occasion for the bond issue.   As a matter of fact, while the business was carried on under the corporate name of the Union Steel Company, the formalities of corporate management were dispensed with, and the methods followed were entirely those of a partnership.   In his answer, W. H. Donner says, " No meetings of the stockholders, and no meetings of the directors as such (except for organization) of said Union Steel Company were ever held until after the arrangement for the sale of its capital stock to the United States Steel Corporation, as hereinafter described.   The business affairs of said enterprise were carried on by Mr. A. W. Mellon, Mr. R. B. Mellon and myself."   The matter of the organization of the company and the peculiar methods adopted by its promoters to supply it with funds by lending the money to it, and taking its notes instead of its certificates of stock, is not directly before us, but it has been brought into the case, and we have felt obliged to take note of it, by reason of the zeal of counsel in rearguing questions which were considered and disposed of on the former appeal.   We see no reason whatever to change the conclusions we then reached.

When the case was here before, it was admitted, that for the sale of the properties by W. H. Donner and the Mellons, they received bonds of the total par value of $25,214,288.41, and that the total investment in the Union Steel Company and its subsidiary corporations was $17,853,534.34.   If the bonds be considered as worth par, this left a profit of $7,360,754.07, of which one-fourth belonged to W. H. Donner, and this amount, or $1,840,188.52, was paid or set over to him in bonds of the Union Steel Company, guaranteed by the

United States Steel Corporation. These profits only arose or appeared after the payment of the indebtedness of the company.

That these profits were actually made, and paid over in the shape of bonds, to W. H. Donner, appears over and over again from the records of this case. It appears clearly from the admissions of the defendant in his answer, and it is also shown by the account filed by him, and by the statement of the settlement between him and the Mellons. The defendant admitted, in his statement, exhibit No. 55, offered in evidence upon the trial before the court, that his profits were $1,840,188.52. He testified that he had this statement prepared, showing accurately the profit made by the Messrs. Mellon and himself. In a prior statement rendered May 1, 1903, identified as exhibit No. 37, he had already admitted a total profit on the transaction of $7,316,229.27, of which his one-fourth would be $1,829,057.32.

That the profits of the defendant, embodied in bonds, were actually in his possession or control, was not disputed, on the former appeal. The dispute was as to the proportions only, into which these profits of defendant should be divided in the settlement with his brother. Now, in the present appeal, it appears that, for the first time in the history of the case, W. H. Donner set up before the master, the claim, that instead of the Union Steel Company being allowed par for the bonds taken from it by its stockholders in payment of the funds advanced to it, there was an arrangement made between themselves by which he and the Mellons took the bonds from the company at a valuation of about seventy cents on the dollar. This claim is entirely inconsistent with the theory of the case when it was tried upon its merits in the court below, and when presented here before. If it is correct, the defendant could not have made the profit of $1,840,188.52 which he then reported and admitted over and over again. Whether they did or not take the bonds from the company at this reduced rate, instead of receiving them at par, is a question of fact; and both the master and the court below have found this fact against the contention of appellant, and have found that the bonds were issued and accepted at par.

The master, in his report, after referring to the fact that

the attempted distribution of the bonds into capital and indebtedness by the defendant, was arbitrary, and not in accord with the actual transaction, says : " I cannot find from the evidence that of the investment of $17,853,534.34, $2,106,596.19 was capital stock and the remainder, $15,746,938.15, indebtedness, and that the bonds received were distributed accordingly ; nor can I find that the price at which the bonds were taken was $708.0721." (on each $1,000 bond); thus squarely negativing the contention of appellant.

We can find nothing in the facts of the case, or in the details of the transaction, from start to finish, to indicate that the bonds of the company were not considered as worth par, by its stockholders, when they accepted them in exchange for the properties of the company in what was to them a most profitable deal.

It must be remembered that the bonds were not sold or offered for sale by the company in the open market, but were placed by the defendant and his associates upon what was at the time their own property, and issued for the express purpose of enabling them to make sale of that property on satisfactory terms.   Under such circumstances, the bonds were presumably worth much more to the stockholders than they would be to the outside public.   Especially was this the case, when the transaction did not not call for new funds from these stockholders, but involved only the sale of properties in which their funds were already invested to a very large amount, and in an enterprise which they would be compelled to carry to a successful issue, in order to save themselves from heavy loss.   In other words, if the investment was for any reason undesirable, they were already committed to it, and to a very large extent.

The defendant never set up in his answer any claim that the bonds were accepted at less than par.   Nor does his statement of accounts contain any such claim ; but throughout it constantly and consistently treats the bonds as being worth par.   The statement upon which settlement was made between W. H. Donner and the Mellons, also treats the bonds throughout upon the basis of par, and contains no indication that any part of them were taken, or were regarded, as worth less than par.   That statement, shown as exhibit No. 4, contains a note

as follows: "Note C. Profits shown are based on bonds at par."

A further bit of corroborative evidence appears in the fact that the defendant gave to the plaintiff a rough statement, exhibit No. 36, in which he then estimated that plaintiff was entitled to a profit of sixty per cent upon the transaction. In this statement, no distinction is made between the bonds at par and cash. Frank Donner's investment had been $25,000 in cash, and it was upon this amount that W. H. Donner then desired to make a settlement, on the basis of sixty per cent profit. This would be $15,000, which, added to the $25,000 of original investment, made $40,000; and, in pursuance of this calculation, W. H. Donner actually sent his brother forty $1,000 bonds, which had a total par value of just $40,000. This shows that at that time, March 10, 1903, which was only a few days after the bonds had been received, with the guarantee of the United States Steel Corporation upon them, the defendant regarded them as worth par, and used them at that valuation in attempting to discharge an admittedly just and valid obligation payable in cash or its equivalent.

And another incident, showing the view then held as to the value of the bonds, is this. The bonds were received by W. H. Donner and the Mellons early in March, 1903, and on April 9, within a month thereafter, the defendant wrote to Frank Donner offering to send him $1,000 for one of his bonds, thus indicating in a very practical way that he then considered them worth par. Again, on June 6, 1903, ten days before this bill was filed, the defendant sent to counsel for plaintiff a paper, identified as exhibit No. 37, which is entitled a "general statement, showing selling price, investment and profits," and in this statement the bonds are treated throughout as if they were taken as cash at their par value.

That these bonds were as a matter of fact issued and accepted by all parties concerned, at the par value, is strongly evidenced by the agreement with the United States Steel Corporation, and by the proposition of T. Mellon & Sons to the directors of the Union Steel Company, by which they agreed to purchase, and did purchase, at par and accrued interest, $3,000,000 of the bonds. Everywhere throughout the transaction it appears that the bonds were considered as worth par and as the

equivalent of that much in cash.    It is difficult to see any reason why this should not have been the case.    The bonds were issued by the Union Steel Company, and payment of them is guaranteed by the United States Steel Corporation, one of the largest, richest and most powerful corporations in the world. They are of the denomination of $1,000 each ; are dated December 1, 1902; are payable at the expiration of fifty years after their date; are free of taxes; are redeemable after December 1, 1907 at 110 and interest; and bear interest from December 1, 1902, at the rate of five per cent per annum payable semiannually.    They are secured by a first mortgage and collateral trust deed upon all the property of the Union Steel Company, including the stocks and after-acquired property; and said mortgage provides for an annual sinking fund of two per cent of the bonds outstanding and unpaid.

The suggestion of counsel for appellee seems to be well founded, that it was an afterthought on the part of the appellant, to claim that these bonds were issued in payment of the indebtedness of the company at a valuation of a little more than seventy cents on the dollar.    The master finds that the position taken by the accountant in this respect was untenable, and the court below was much more emphatic in rejecting the suggestion that the accountant should have the benefit of the bonds at seventy cents on the dollar, and we see no reason to differ with its conclusion in this respect.

Several of the assignments of error raise questions as to certain credits claimed by accountant, and disallowed by the master and the court below, and as to the charge of $1,818.18 against the accountant in the matter of the Union Improvement Company.    These were all purely matters of fact, and there was sufficient evidence to sustain the findings of the master, which are affirmed by the court, and we will not disturb them.

The assignments of error are all overruled, the decree of the court below is affirmed, and this appeal is dismissed at the cost of appellant.